Pakton, J.
The plaintiff corporation filed its petition in this court for the appropriation of a tract of land consisting of about eight acres in Miami township, in this county, on the waters of the Little Miami river, the petition being in the usual form and containing the usual allegations of petitions for the appropriation of real estate. The defendants, John T. White et al, having been duly served with summons, the cause came on for hearing upon the preliminary questions on December 19th, 1906. Afterwards a jury was called and impanneled, testimony of witnesses heard and a verdict for the defendants, John T. White et al, returned by the jury. A motion for a new trial was made by defendants and overruled, and judgment rendered on the verdict.
The matters presented to this court for determination are those involved in the following preliminary questions, viz:
1. The corporate existence; 2. Inability to agree with the owner; 3. The necessity for the appropriation; 4. The right to make the appropriation.
The plaintiff offered satisfactory and conclusive evidence to prove the facts involved in the preliminary questions, the defendants offering no evidence, but contending that the objects and purposes of the plaintiff corporation, as stated in its articles of incorporation, are such that it can not properly be vested with the right of eminent domain, and that the land sought to be appropriated is not necessary for the purposes of the company.
The plaintiff corporation was incorporated on the 23d day of July, 1906, under the general law of the state of Ohio. Following is a statement of the purposes of said company as the same are expressed in its articles of incorporation, viz:
‘ ‘ Third. Said corporation is formed for the purpose of. acquiring, erecting, building, maintaining and operating dams in the Little Miami river, in the state of Ohio, to raise and maintain a head of water; of constructing and maintaining canals, locks and race ways to regulate and carry said head of water to any plant or power house where electricity is to be generated; of erecting and maintaining a line or lines óf poles whereon to attach or string wires or cables to carry and transmit electricity; of acquiring, producing, manufacturing, generating and selling *203 electricity for light, heat, power and other purposes; of acquiring, holding and selling franchises and privileges to supply the same to municipal corporations; of acquiring by eondemnatiton, lease, purchase or otherwise, and of possessing, holding and selling such real estate and personal property as may be necessary or convenient for the proper. conduct of said business, and of doing any and all other things necessary and incident to any of said purposes. Said company’s improvements are to begin at the confluence of the Ohio and the Little Miami rivers, in Hamilton county, Ohio, and extend along the said Little Miami river and through the counties of Hamilton, Clermont and Warren, to a point in said river opposite the village of Morrow in said last named county.”
Plaintiff claims the right of eminent domain under the provisions of Section 8878, Revised Statutes of Ohio, as amended April 23, 1904 (97 O. L., 300). By reference to that section it appears that the purposes for which the corporation is created bring it clearly within the meaning of that section, and give to it the right to appropriate private property. But it is claimed that the purposes and objects of the plaintiff corporation are such as to bring it within the limitation of the constitutional inhibition; that the use for which it is sought to appropriate the land is a private and not a public use (Section 19, Article I, and'Section 5, Article XIII of the Constitution of Ohio).
The question, therefore, is: Had the Legislature the power to confer upon the corporation the right to condemn property for the purposes expressed in its articles of incorporation?
It has been held that the sections of the Constitution, above referred, to, do not confer the power of eminent domain, but simply designate means for, and limitations upon, its exercise. This is in accordance with the definition of eminent domain that it is “a right inherent in all sovereignties, and, therefore, would exist without any constitutional recognition”; that it antedates Constitutions, which are only declaratory of previously existing universal law, and is not conferred, but is limited by them; that the title in fee of all property is held subject to the public user, of the necessity or expediency of which use the goverment itself must judge. And it is on the ground of the general public good *204 that the Legislature grants to companies or bodies the compulsory power of taking the property of individuals.
The question whether or not a contemplated use is a public use, or for the public welfare, within the meaning of the Constitution, is one for the Legislature. Geisy v. C., W. & Z. Railroad Co., 4 Ohio State, 326.
In deciding the case last referred to, Justice Ranney makes the following statement — •
“In saying that the exercise of this power properly belongs to the General Assembly and not to the judiciary, I do not intend to express a doubt that in cases where its limits have been exceeded, or its spirit and purpose abused, a judicial remedy may not be afforded. ’ ’
The plain and obvious meaning of'which is, that unless there should be a gross and manifest abuse of the -power by the Legislature, the judiciary should not assume to determine it.
In this case the Legislature has declared that the use is a public one, and the courts should hold it to be such, unless it manifestly has no tendency to promote such use (12 Cush., Mass., 475). There is a presumption in favor of the public character of the use arising from its having been authorized by the Legislature (12 Cush., Mass., 475). No general definition of what degree of public good will meet the constitutional requirement for a “public use” can be framed, as it is in every case a question of local policy.
Under certain general principles, however, upon which the decisions are based, the term “public use” is usually intended to cover a use affecting the public in general, or any number thereof, as distinguished from particular individuals. If the use is in fact a public one, its character is not changed by the fact that the control of the property sought to be taken will be vested in private persons, or private corporations, actuated solely by motives of private gain,„and that private purposes will be thereby incidentally served.
On this subject the Supreme Court of Ohio has said, in Geisy v. C., W. & Z. Railroad Co., 4 Ohio State, 326:
Louis J. Bolle, William G. Bishop and Walter G. Taylor, for plaintiff.
E. S. Stevenson, for defendants.
“It rests upon the public necessity — subordinates the rights of one to the welfare of all — and is just as broad as that necessity, and no broader. If the wants of the public are attained by the acquisition of an easement, nothing more can be taken; if the whole interest is required, the whole may be appropriated. Whether this power is derived from an implied condition in every grant, by which property is held under the government, and whether where no constitutional restraints exist, it may be exercised without making compensation, are rather questions for ingenious speculation, than of practical importance.”
There are numerous authorities sustaining the constitutionality of acts authorizing the fiowage of water and the erection of dams in streams for the purpose of furnishing power to run mills of various kinds, but by reason of the comparatively recent date of the employment of electricity as power for general purposes, decisions are not to be found which are directly in point in the present case.
The non-navigable character of the Little Miami river, between the points named in plaintiff’s articles of incorporation, is well established, thus taking out of the question the rights of the public in regard thereto. If we compare the purposes of this plaintiff with the purposes and uses of the mills above referred to and their respective relations to the public, it certainly will appear that the importance of plaintiff’s proposed use of its powers is of vastly greater benefit to the public. The successful and economical generation of electricity by water power has long passed the experimental stage and its many uses for public and private purposes may not now be enumerated.
On the authorities, and for the reasons above given, judgment is rendered in favor of the plaintiff on all the preliminary questions in this case.